UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ABUBAKR ABDULLAH,<br><br>    Plaintiff,<br><br>    v.<br><br>ODIE WASHINGTON, et al.,<br><br>    Defendants. | Civil Action No.  02-1642 (JDB) |

### MEMORANDUM OPINION

In this action filed pursuant to 42 U.S.C. § 1983, plaintiff seeks damages for violation of his Eighth Amendment rights stemming from his alleged exposure to second-hand tobacco smoke while confined in 2002 at the District of Columbia Department of Corrections' Central Detention Facility ("D.C. Jail").  Now pending are defendants' motion for leave to amend their answer and their motion for summary judgment.[1]  Upon consideration of the parties' submissions and the applicable law, the Court will deny defendants' motion to amend but grant their motion for summary judgment.

---

[1] Plaintiff named as defendants in their official and individual capacities Odie Washington, Director of the D.C. Department of Corrections; James Anthony, Assistant Director of the Department of Corrections; Marvin L. Brown, Deputy Director for Operations at the D.C. Jail; and Judy Lyons, Deputy Warden for Support Services at the D.C. Jail.  Because a claim against individual defendants in their official capacities is properly deemed a suit against the municipality, the Court added the District of Columbia as a defendant and dismissed the claims against the individual employees of the District of Columbia in their official capacities.  *See* Order of July 7, 2006 [Dkt. No. 40].

# I. BACKGROUND

Plaintiff was incarcerated at the D.C. Jail from January 21, 2002 to August 23, 2002. Complaint ("Compl.") at 5; *see* Defendant's Statement of Material Facts [Dkt. No. 56-3] ¶ 3. Plaintiff asserts that while at the jail he was exposed to high levels of environmental tobacco smoke ("ETS"). *Id.;* Pl.'s Ex. 1 (Dep. of Abubakr Abdullah) at 123-24, 134. Plaintiff was transferred eight times within the jail; three times he was housed in non-smoking cellblocks. Def.'s Facts ¶ 3. Plaintiff spent nearly five of his seven months at the jail in smoking units, Def.'s Facts ¶ 4, but he claims that smoking occurred in every cellblock to which he was assigned. Pl.'s Ex. 1 at 123-24, 134; *see* Pl.'s Ex. 8 at 10-12 (Environmental Inspection Report from May 22 to June 13, 2002) ("smoking is permitted in all sixteen . . . cellblocks").

On May 31, 2002, plaintiff filed a grievance regarding his exposure to second-hand smoke to Marvin L. Brown, the D.C. Jail's Deputy Director of Operations. Def.'s Exs. 5, 11. Mr. Brown directed plaintiff to address his concerns with his correctional counselor and the case manager for his housing unit. Def.'s Ex. 11. Plaintiff did not appeal Mr. Brown's response to his grievance. Def.'s Ex. 13 (Abdullah Dep.) at 125. Plaintiff claims that despite his request for the necessary forms to file an appeal, jail officials failed to provide them to him. Pl.'s Ex. 1 at 136. As a result, plaintiff wrote letters to defendants Washington, Anthony, and Lyons regarding his exposure to second-hand smoke. *Id*. at 143-48. Plaintiff asserts that these letters were "answered without sufficient efforts or satisfaction." Compl. Att. at 2. Plaintiff then initiated this action in federal court on August 20, 2002.

Plaintiff alleges that his exposure to second-hand smoke may imperil his physical health. *Id*. According to his expert, plaintiff's exposure to second-hand smoke increases his risk of

developing lung cancer, asthma, and nasal sinus cancer. Pl.'s Ex. 5 at 2, 13. Plaintiff therefore claims that defendants have violated his rights under the Eighth Amendment to the United States Constitution. Compl. Att. at 2. He seeks monetary damages for the alleged physical injuries he has sustained and for any future health problems attributable to defendants' alleged misconduct. Compl. at 5.

## II. DISCUSSION

*A. Defendants' Motion to Amend the Answer*

In a motion to amend the answer filed in conjunction with their summary judgment reply brief, defendants seek to raise the affirmative defense of plaintiff's failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a). *Jones v. Bock*, 549 U.S. ___, 127 S.Ct. 910, 921 (2007) (concluding "that failure to exhaust is an affirmative defense under the [Prison Litigation Reform Act]"). Without this amendment, the Court may not consider defendants' exhaustion argument advanced in their summary judgment motion. *See Harris v. United States Dep't of Veterans Affairs*, 126 F.3d 339, 341 (D.C. Cir. 1997) (requiring "affirmative defenses [to] be raised in a responsive pleading, not a dispositive motion").

Whether to grant leave to amend a pleading is a matter left to the district court's sound discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Nwachukwu v. Karl*, 222 F.R.D. 208, 210 (D.D.C. 2004). The Court must use a generous standard in evaluating a motion to amend and in determining the propriety of the proposed amendment on a case-by-case basis. *Harris*, 126 F.3d at 344. Among the reasons that may justify denying leave to amend are undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and the futility of the amendment. *Foman*, 371 U.S. at 182.

Because amendments are to be liberally granted, the non-movant bears the burden of showing why an amendment should not be allowed. *Dove v. WMATA*, 221 F.R.D. 246, 247 (D.D.C. 2004).

Plaintiff opposes the motion to amend, arguing that defendants have waived the exhaustion defense, that they have unduly delayed moving to amend, and that plaintiff will be prejudiced by the amendment. Defendants counter that they "reserved the right to amend [their] answer to the complaint and raise any additional defenses, which the evidence in discovery may reveal." Memorandum of Points and Authorities in Support of Motion for Leave to Amend Defendants' Answer at 1.

It is evident that defendants have been dilatory in moving to amend the answer. This case was filed five years ago. Defendants did not assert the exhaustion defense in their answer (filed September 2, 2003) or in two motions to dismiss (filed January 29, 2003 and April 21, 2006). Nor did they seek to amend the answer at the close of discovery on March 7, 2007, or even upon their filing of the pending summary judgment motion on April 6, 2007, in which the defense was first discussed. Rather, defendants waited until the filing of their reply brief on June 4, 2007, to seek leave to amend the answer. Defendants' implied revelation of this possible defense only after plaintiff's deposition in March 2007 is belied by the record. Plaintiff pled exhaustion in the complaint, which provided a reasonable basis for defendants to assert a failure to exhaust among the other affirmative defenses they did plead in their answer. And defendants, having custody and control of plaintiff's prison file, were in a position all along to determine the plausibility of raising the defense.

A key issue in considering a motion to amend is whether the non-movant will suffer any prejudice if the amendment is allowed. *Nurriddin v. Goldin*, 382 F. Supp.2d 79, 91 (D.D.C. 2005), *aff'd* 2007 WL 1126199 (D.C. Cir. Apr. 16, 2007). Plaintiff claims that prejudice will result because of the significant discovery that has taken place, including document discovery, numerous depositions, and the hiring of an expert. Because discovery is closed, plaintiff contends that he cannot acquire documents and evidence to support his claim that he has exhausted his remedies. Indeed, plaintiff reasonably asserts that he "might have formulated his discovery requests differently" had he known of defendants' intent to pursue the exhaustion requirement as a defense. Pl.'s Opp. to Mot. for Leave to Amend Answer at 7. These burdens, the Court concludes, are real and substantial.

In addition to plaintiff's demonstrated prejudice, the Court finds that principles of fairness and judicial economy weigh heavily against granting the motion to amend. Not only have the parties engaged in extensive discovery but they have also briefed the issues on the merits, the adjudication of which is strongly favored.[2] *See Shepherd v. Am. Broad. Cos*., 62 F.3d 1469, 1475 (D.C. Cir. 1995). Accordingly, defendants' motion to amend their answer is denied.[3]

*B. Defendants' Motion for Summary Judgment*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that

---

[2] The Court is also mindful of the extensive time and resources that have been expended, since March 2005, by plaintiff's counsel appointed from the Court's Civil Pro Bono Panel. *See* Order of December 17, 2003 (appointing counsel upon review of defendants' answer).

[3] In light of this conclusion, the Court does not reach defendants' exhaustion of administrative remedies argument.

there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering whether there is a triable issue of fact, the Court must draw all reasonable inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255. The party opposing a motion for summary judgment, however, "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Any factual assertions in the movant's affidavits will be accepted as being true unless the opposing party submits his own affidavits or other documentary evidence contradicting the assertion. *Neal v. Kelly,* 963 F.2d 453, 456 (D.C. Cir. 1992).

Defendants assert, among other reasons for relief, that plaintiff has provided insufficient evidence to support his Eighth Amendment claim. To establish a claim under the Eighth Amendment based on exposure to ETS, plaintiff must demonstrate that, "with deliberate indifference," defendants "exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993). To prove his claim, plaintiff must provide "objective" evidence of his exposure to unreasonably high levels of

ETS and the effect on him, and "subjective" evidence of deliberate indifference by prison officials based on current attitudes and conduct of those authorities.  *Id*. at 35-37.

    1.  <u>Plaintiff Has Not Satisfied the Objective Element</u>

The Eighth Amendment does not mandate smoke-free prisons.  *Scott v. Dist. of Columbia*, 139 F.3d 940, 942 (D.C. Cir. 1998).  And "anecdotal accounts" of smoking at the jail are insufficient to establish a constitutional violation.  *Id*.  Rather, to satisfy the objective factor, plaintiff must provide some kind of "`scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that . . . injury to [his] health'" was actually caused by exposure to ETS.  *Id*. (quoting *Helling*, 509 U.S. at 36).  A court must also assess whether plaintiff has established that society considers the demonstrated risk of ETS exposure "to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling*, 509 U.S. at 36 (emphasis in original).  To maintain his claim, however, plaintiff must demonstrate that "*he himself* [was] exposed to unreasonably high levels of ETS," *id*. at 35 (emphases added), and that a causal relationship exists between his alleged health conditions and "an increased risk of harm to him from second-hand smoke."  *Scott*, 139 F.3d at 943.

In support of his claim, plaintiff relies on an analysis of the D.C. Jail's conditions by James L. Repace, a biophysicist and "secondhand smoke consultant" specializing in issues of indoor air pollution from ETS.  Pl.'s Ex. 4.  Mr. Repace has been qualified as an expert in a number of cases related to ETS.  *Id.*  He calculated the "uniformly diluted respirable particle air pollution concentration from secondhand smoke (SHS- RSP)" present in the D.C. jail facility during the time of Mr. Abdullah's incarceration using a four-month period from May 2, 2002 to

August 2, 2002 as a "representative sample of conditions in the prison throughout the period of plaintiff's incarceration."  Pl.'s Ex. 5 at 3, 6.

Mr. Repace's analysis has two main types of measurement, an air exchange rate and the smoker density.  The air exchange rate was based on the fact that smoking was permitted in 16 blocks of the facility, that the prison lacked documentation that the air-conditioning system was being monitored, and that some cells had low or no air flow.  *Id.* at 4-5.  Mr. Repace derived his findings about inadequate air flow, however, from assumptions and estimates drawn from an inspection report of D.C. Jail conditions two years before plaintiff's incarceration there and from the conditions of a cellblock, NE-3, where plaintiff never resided, Def.'s Ex. 14 (Dep. of James L. Repace) at 149-50; Def.'s Ex. 1 (Pl.'s Transfer History), and where the cell vents were not working.  Pl.'s Ex. 6 (Repace Dep.) at 154.  Mr. Repace calculated the smoker density using the dimensions of the facility, the number of inmates, the number of cigarettes and cigars sold by the jail canteen in 2002, the rate of ventilation, and an estimate of the percentage of smokers among the D.C. inmate population extrapolated from other litigation in which Mr. Repace has been involved in New York and Delaware.  Pl.'s Ex. 5 at 5-6.  Based on these assessments, he concluded that the level of plaintiff's ETS exposure was in the "'Very Hazardous' . . . range of the federal Air Quality Index."[4]  *Id*. at 7.

Mr. Repace also offered his opinion on the future health risks to plaintiff caused by exposure to ETS.  He found that plaintiff has an increased risk for numerous harms to his health.

---

[4]  As indicated by its cover page, Mr. Repace's Risk Assessment Report was filed as an exhibit for the plaintiff in this case and for the plaintiff in a separate action pending before Judge Rosemary Collyer, *Williams v. Washington*, Civ. Action No. 02-1641.  Thus, throughout the report, Mr. Repace refers to his subjects collectively as "plaintiffs."

These include, but are not limited to, "38 times the lung cancer risk based on the SHS exposure level for the average male for 1 year's exposure," a "55% increase in risk of developing heart disease relative to the low exposure group as a result of [his] exposure to SHS in the DC jail for a 1 year period," and increased risks of asthma induction and nasal sinus cancer. *Id.* at 15.  Mr. Repace admits, however, that his calculations are erroneously based on ETS exposure for a period of one year instead of the less than five-month exposure that plaintiff endured; he therefore concedes that a shorter duration would reduce plaintiff's risk of harm. *See* Def.'s Ex. 14 at 186-87 (risk is reduced proportionately to duration of exposure).

Mr. Repace, plaintiff's only expert witness, is not a medical doctor–he is a biophysicist. Def's Ex. 14 at 198.  It is unclear, then, how he would be competent to testify about the effect of ETS on plaintiff's current or future medical condition.  He can measure the levels of ETS in the D.C. Jail.  But Mr. Repace conceded in his deposition that he never went to the jail, either during the time of plaintiff's exposure or after.  He never tested plaintiff.  He never looked at any of plaintiff's medical records and he never spoke with any of plaintiff's doctors. Def.'s Ex. 14 at 146, 175-76, 203.  Hence, he has neither the expertise (since he is not a medical doctor) nor the information to enable plaintiff to establish the objective element of the Eighth Amendment claim, including the requisite causal link. *See Scott*, 139 F.3d at 943 ("Dawson failed to demonstrate a causal relationship between his conditions and an increased risk of harm to him from second-hand smoke. Dr. Munzer's testimony established no such nexus. He never examined Dawson (or Smith).  He had no knowledge of Dawson's medical condition or of the actual levels of smoke to which Dawson was exposed.").

Mr. Repace's report simply is too generalized to satisfy the objective element of the analysis. It is also fundamentally deficient because it is erroneously based on a period of confinement at the D.C. Jail substantially more than twice plaintiff's actual confinement, which, Mr. Repace concedes, dramatically alters his risk estimates. Moreover, because the report lacks any information particular to plaintiff's alleged exposure levels, a failing emphasized in *Scott* as well, the Court cannot assess whether plaintiff's exposure to ETS "violate[d] contemporary standards of decency." *Helling*, 509 U.S. at 36. All of this means that plaintiff cannot carry his burden on the objective factor under *Helling*. Finally, as discussed below, even if plaintiff could satisfy the objective element, he may not proceed because he has failed to present a triable issue on the subjective element of his Eighth Amendment claim.

   2.  Plaintiff Has Not Satisfied the Subjective Element

To satisfy the subjective factor, plaintiff must establish deliberate indifference by showing that prison officials knowingly and unreasonably disregarded an objective intolerant risk of harm. *Scott*, 139 F.3d at 943 (quoting *Farmer v. Brennan*, 511 U.S. 825, 846 (1994)). Hence, such officials "'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw the inference.'" *Id*. (quoting *Farmer*, 511 U.S. at 837). Deliberate indifference should be determined in light of the prison authorities' current attitudes and conduct. *Helling*, 509 U.S. at 36. The adoption of a smoking policy "bear[s] heavily on the inquiry into deliberate indifference," *id*., and "militates against a finding of deliberate indifference," even if it was not perfectly enforced, *Scott*, 139 F.3d at 944. Unrefuted evidence of good-faith efforts to enforce the policy, improve ventilation, and address grievances may warrant summary judgment on a claim of deliberate indifference. *Id*.

Plaintiff faults defendants for not imposing restrictions on smoking at the D.C. Jail, *see* Compl. Attach., but a non-smoking policy was in fact in existence during the time of plaintiff's incarceration. *See* Def.'s. Ex. 2 at 4 ¶ 4 & Ex. 18. Moreover, the D.C. Jail was undergoing extensive renovation to improve the air quality, including the ventilation system, and the overall condition of the facility. Def.'s Ex. 15 (Dep. of Odie Washington) at 35-36. As part of federal court oversight of DOC, the Department of Health ("DOH") performed quarterly inspections of the jail and issued reports. *Id*. at 45-46. DOC was required to abate any problems identified in the reports, and it typically filed progress reports. *Id*. at 48-49. Because the warden and his staff were responsible for creating an abatement plan, *id*., at 49, the DOC's Environmental Services Office forwarded the DOH reports to the warden of the D.C. Jail for further action. Def.'s Ex. 16 (Dep. of James L. Anthony) at 47. In addition, "on a daily basis," the environmental services staff would respond to complaints from inmates or staff about the temperature by testing the air quality and taking necessary steps to rectify the situation. *Id*. at 57.

Although plaintiff complains that defendants inadequately enforced the no-smoking rules, such "imperfect enforcement of a nonsmoking policy" generally cannot satisfy the subjective factor under *Helling*. *See Scott*, 139 F.3d at 944. Indeed, the D.C. Circuit in *Scott* concluded that evidence of an inability or an unwillingness by prison officials to enforce no-smoking regulations cannot carry a plaintiff's burden absent evidence that a substantial risk of harm actually existed, because "there must be an objectively intolerable risk in order for there to be a 'knowing and unreasonable' disregard of it. It makes no sense to charge someone with improperly ignoring a danger that never existed." *Id*. at 943-44.

Plaintiff's evidence, then, which is largely based on asserted imperfections in the nonsmoking policy at the D.C. Jail in 2002 and lax enforcement, is insufficient to satisfy the

subjective element of deliberate indifference, particularly since the very existence of such a policy militates against such a finding.  *See Helling*, 509 U.S. at 36.  Plaintiff has not credibly refuted defendants' evidence demonstrating their "good-faith attempts" to correct the air quality at the D.C. Jail.  *Scott*, 139 F.3d at 944.  The Court concludes, therefore, that no reasonable juror could find from such actions that prison officials were deliberately indifferent to plaintiff's situation.  As the court observed in *Scott*: "Deliberate indifference is characterized by 'obduracy and wantonness.'  Those words do not fit the actions of the prison officials here."  *Id*. (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

## CONCLUSION

For the foregoing reasons, the Court concludes that plaintiff has failed on the record presented to demonstrate a genuine issue of material fact on the Eighth Amendment claim and that defendants are therefore entitled to judgment as a matter of law.[5]  A separate Order accompanies this Memorandum Opinion.



s/
JOHN D. BATES
United States District Judge

Dated: January 3, 2008

---

[5]  In light of the Court's ruling on the Eighth Amendment claim, it does not reach defendants' municipal liability and qualified immunity arguments.